

FILED

2018 Oct-26  PM 01:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MATT ABBOTT, an individual, | ) | |
| THE ABBOTT LAW FIRM, LLC, | ) | |
| an Alabama Limited Liability Company, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| V. | ) | **CIVIL ACTION NO.:** |
| | ) | |
| SLOCUMB LAW FIRM, LLC, an | ) | |
| Alabama limited liability company; | ) | |
| MICHAEL W. SLOCUMB, an | ) | |
| Individual; and JOHN  DOES 1 – 10, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW, the Plaintiffs, by and through the undersigned counsel of record and for their Complaint against the Defendants, state as follows:

### I.     PARTIES

1.     Matt Abbott ("Abbott") is an individual resident of the State of Alabama and is over the age of nineteen (19) years.  Abbott has practiced law in the State of Alabama and in various jurisdictions nationwide since 2000, primarily serving personal injury related clients.

2.     The Abbott Law Firm, LLC ("ALF") is a limited liability company organized under the laws of the State of Alabama.  ALF is a law firm with its

principal place of business in Birmingham, Alabama.  Abbott is the sole member of ALF.  ALF provides legal services to personal injury related clients throughout the State of Alabama and in various jurisdictions nationwide. (Abbott and ALF are hereinafter collectively referred to as "Abbott").

3.      Defendant, Slocumb Law Firm ("SLF") is a limited liability company organized and existing under the laws of the State of Alabama with its principal place of business located at 145 E Magnolia Avenue # 201, Auburn, Alabama 36830.

4.      Defendant, Michael W. Slocumb ("Slocumb") is an individual resident of the State of Alabama and is over the age of nineteen (19) years. Upon information and belief, Slocumb is an attorney licensed to practice law in the State of Alabama and furthermore, is the principal officer of SLF. (Slocumb and SLF are collectively referred to hereafter as "Defendants"). Defendants compete directly with Abbott in primarily serving personal injury related clients in the State of Alabama and other jurisdictions.

5.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named here as John Does 1-10 are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to show their true names and capacities when the same has been ascertained. Plaintiffs are informed and believe and thereupon allege that each of the Defendants designated herein as a Doe was in some manner legally responsible for

2

the events and occurrences herein alleged and unlawfully and proximately caused damages to Plaintiffs.

## II.   <u>JURISDICTION AND VENUE</u>

6.     This is an action for damages and relief for trademark infringement, false designation of origin, false or misleading description of fact, false or misleading representation of fact, unfair competition, false advertising, and dilution under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and for violations of the laws of the State of Alabama, specifically trademark infringement, dilution, deceptive trade practices, false advertising and unfair competition under Ala. Code §§ 8-12-1, *et seq*. and Ala. Code §§ 8-19-1, *et seq*., and violations of the Alabama Right of Privacy Act, Ala. Code §§ 6-5-770, *et seq*., and violations of the Alabama common law of conversion.

7.     This Court has jurisdiction over the subject matter pursuant to the provisions of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), in that this action arises under the trademark laws of the United States.

8.     Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the Plaintiffs' claims arising from the laws of the State of Alabama as those claims are substantially related to those causes of action over which the Court has original jurisdiction.

9.     This Court may exercise personal jurisdiction over the Defendants as the Defendants are regularly doing business in this judicial district and have committed tortious acts within this judicial district through the creation of a substantial likelihood of confusion in the marketplace, among other things.

10.     Venue is proper under 28 U.S.C. § 1391(b) in that one or more of the Defendants are doing and transacting business within this judicial district and have committed the tortious acts complained of herein in this judicial district of the State of Alabama.

### III.   FACTUAL BACKGROUND

#### A.    Abbott's Building of the Outlawyer Brand

11.     Abbott is the owner of United States Patent and Trademark Office ("USPTO") Registration Number 5,083,664 for THE OUTLAWYER ("THE OUTLAWYER Trademark").   A copy of THE OUTLAWYER Trademark is attached hereto as Exhibit A.  As set forth in the registration, Abbott first used THE OUTLAWYER Trademark at least as early as November 1, 2014.

12.     Abbott has continuously practiced law in Alabama and various jurisdictions throughout the United States since 2000.  During this time, Abbott has developed a persona and alter ego of "The Outlawyer" based upon the types of matters he has handled and the clients he has represented.

4

13.     Clients, particularly in the Southeastern region of the United States but also throughout the country, have come to know and recognize Abbott as "The Outlawyer" by virtue of his representation of victims of severe personal injuries and other extreme hardships.

14.     In this regard, clients that retained Abbott have come to associate Abbott with an aggressive, renegade and outlaw approach to the representation of his clients' causes. Thus, clients have come to know the Outlawyer as the provider of legal services in this manner.  Additionally, Abbott's legal colleagues and friends have regularly referred to Abbott as "The Outlawyer" based upon this approach and persona. Accordingly, Abbott's registration of THE OUTLAWYER Trademark served to formalize Abbott's long-standing common law rights to THE OUTLAWYER Trademark and proprietary rights and goodwill that Abbott had developed since the beginning of his law practice.

15.     In conjunction with the development of THE OUTLAWYER Trademark, Abbott has consistently incorporated the use of a signature look and style in the marketing of the Outlawyer and the legal services provided by Abbott. This signature look and style includes the following elements that together and in combination create an overall visual impression unique to the Outlawyer: (a) a distinctive cowboy style hat; (b) the use of a jacket (either a leather jacket or sport coat); (3) a signature western-style background music; and (4) prominent featuring

of THE OUTLAWYER Trademark in connection therewith.   Together, these attributes compose the "OUTLAWYER Persona" and serve as associated trade dress of THE OUTLAWYER Trademark.   Abbott has developed the OUTLAWYER Persona into his own alter ego such that the consuming public have come to know and recognize Abbott as the Outlawyer. Like THE OUTLAWYER Trademark, Abbott has also developed substantial goodwill in the associated trade dress, including THE OUTLAWYER Persona.

16.     In particular, Abbott has incorporated THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, in all aspects of his practice from his own personal style and appearance to the types of matters he has handled and the clients he has represented.   Abbott also incorporates the OUTLAWYER Persona in the advertising and promotion of his legal services by publicly appearing on routine basis using the OUTLAWYER Persona, in addition to THE OUTLAWYER Trademark.

17.     In an effort to further expand upon and continue promotion of Abbott's legal services through the use of THE OUTLAWYER Trademark and the continued development of the associated trade dress, including the OUTLAWYER Persona, starting in approximately Summer of 2015 to the present, Abbott began to acquire numerous internet domains. In acquiring these various domains, Abbott sought to establish a broad network of internet domains for the further promotion of Abbott's

legal services using THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, as well as for the expansion of the Outlawyer brand, in general, across the Southeastern United States and Colorado. A listing of the internet domains acquired by Abbott is attached hereto as Exhibit B.

18.     Each of these domains are linked to Abbott's main webpage www.outlawyer.com, which launched in March of 2017, where Abbott's image as the Outlawyer, THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, are all currently depicted to the consuming public. Exhibit C. Through this website and the network of connected internet domains and social media outlets, including Facebook, potential clients may contact Abbott directly regarding potential representation by the Outlawyer. A copy of Abbott's Facebook page is attached hereto as Exhibit D.

19.     In addition, Abbott has further promoted THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, through a series of live country music concerts presented by WZZK radio and sponsored by Abbott's law practice. During these concert events, Abbott personally appeared at each event as the Outlawyer. Furthermore, each of these events were heavily advertised on WZZK radio as promoted by the Outlawyer. Additionally, in all instances, the events featured personal appearances by Abbott in the OUTLAWYER Persona and multiple displays of THE OUTLAWYER trademark,

including full-size banner ads containing THE OUTLAWYER Trademark and associated trade dress and a life-size cutout of Abbott as the Outlawyer. Attached is a copy of the life-size cutout of Abbott seen at these concerts illustrating Abbott's use of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona. Exhibit E.

20.    In addition to the concert series, Abbott has also run multiple radio advertisements for the Outlawyer. These advertisements ran on the following radio stations in the Birmingham marketplace between 2017 and 2018: WZZK, WPYA and WJOX. These advertisements incorporate and feature prominently THE OUTLAWYER Trademark and Abbott's voice as the Outlawyer and further, contain the signature western-style music used in connection with the OUTLAWYER Persona playing in the background.  Furthermore, with respect to the advertisements run on WJOX, the Outlawyer sponsored the WJOX Football Injury Report during the Fall of 2017.

21.    Abbott has also displayed THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, in a series of print advertisements found as full-page tab inserts in various phone books across the State of Alabama from 2016 to 2018.  Examples of the phone book advertisements for Calhoun County (Exhibit F) and Pell City (Exhibit G).

22.    Abbott also displayed THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, in a series of advertisements found on the front cover of the Birmingham Metro Yellow Pages between 2017 and 2018 and distributed each year to over 300,000 homes and businesses.  Exhibit H.

23.    Abbott has also regularly run a 30 second movie picture advertisement for Abbott's law practice from November 2016 through 2018 using THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, at the drive-in movie theater located in Leeds, Alabama. These advertisements ran four (4) times per night before each showing of the feature movie. The YouTube video of this advertisement can be viewed at the following internet webpage: https://www.youtube.com/watch?v=FFMzsUKQNvk.

24.    In addition, the Fall 2016 edition of MidSouth Superlawyers Magazine featured the Outlawyer and in the article, THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, were prominently displayed.  Exhibit I.  Abbott ran the same advertisement in the Fall of 2017 edition and it is scheduled to run again in the Fall of 2018 edition.   The MidSouth Superlawyers Magazine is distributed annually in Alabama, Mississippi, Arkansas and Tennessee.

25.    Similarly, B-Metro Magazine ("B-Metro") has run advertisements for the Outlawyer, featuring THE OUTLAWYER TRADEMARK and the associated trade dress, including the OUTLAWYER Persona, on three separate occasions. First, in the Spring of 2017, B-Metro featured the Outlawyer in its Birmingham's Top Flight Attorneys Edition.   Exhibit J.   Second, B-Metro featured the same advertisement in its January 2018 Faces of Birmingham – Legal Edition.   Finally, B-Metro featured the same advertisement for the Outlawyer in its July 2018 City Guide for Law.

26.    Abbott additionally sponsored an exhibit booth at the 2018 World Deer Expo held July 13 – 15, 2018 at the BJCC.  The exhibit booth prominently featured THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona.  Moreover, Abbott personally appeared in the exhibit booth every day for the entire duration of the event as the Outlawyer using the OUTLAWYER Persona. As part of his personal appearances, Abbott passed out his business cards and additionally, passed out approximately 1500 drink huggers/coozies to patrons.  These drink huggers/coozies contained an image of Abbott as the Outlawyer.   Exhibit K.

27.    Abbott has personally undertaken the foregoing activities to build the Outlawyer brand, by virtue of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, in association with Abbott and

Abbott's law practice. In this regard, the consuming public have come to know and recognize Abbott as the Outlawyer. By the goodwill that now has been established in THE OUTLAWYER Trademark and Abbott's use of the OUTLAWYER Persona, the OUTLAWYER Persona has become an established and recognizable trade dress of THE OUTLAWYER Trademark. Moreover, the OUTLAWYER Persona has acquired secondary meaning in association with THE OUTLAWYER trademark.

28.     In total, since 2015, Abbott has expended over $300,000 in advertising costs across multiple formats, internet domain acquisition, website construction and the overall promotion, building and maintenance of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, as well as the Outlawyer brand and goodwill, in general.

### B.     The Defendants' Infringing Conduct

29.     On or about September 14, 2018, Abbott learned that Defendants had begun to run certain television advertisements for Defendants' legal services on WVTM Channel 13 in the Birmingham, Alabama marketplace. In the advertisement at issue, Slocumb personally appears and portrays himself as a renegade cowboy style character that is wearing a brown cowboy hat and brown leather jacket while a western style music plays in the background (hereinafter referred to as the "Advertisement").

30.     The character portrayed by Slocumb in the Advertisement mimics and copies the Outlawyer.  Specifically, the Slocumb character wears similar, if not identical, apparel to that of the Outlawyer.  Additionally, the western style music played in the Advertisement is similar, if not identical, to that of the western style music played in conjunction with the Outlawyer.  Finally, the movements of Slocumb and the persona he portrays are clearly intended to reflect those of the Outlawyer.  Thus, it is clear that the Slocumb character is intended to and does, in fact, copy THE OUTLAWYER Trademark and the associated trade dress, including specifically, the OUTLAWYER Persona.  An image from the Advertisement is attached hereto as Exhibit L.

31.     Upon information and belief, the Defendants have run and continue to run the Advertisement on various televisions stations across the State of Alabama, including WVTM Channel 13 in Birmingham and WBRC Channel 6 in Birmingham.

32.     Furthermore, upon information and belief, the Defendants are running the Advertisement multiple times a day in markets across the State of Alabama intending to drive potential clients to use the Defendants' services to the detriment of Abbott and the Outlawyer and more specifically, infringing upon Abbott's rights to THE OUTLAWYER Trademark and the associated trade dress, including specifically the OUTLAWYER Persona.

12

33.     Accordingly, on September 14, 2018, the undersigned counsel of record for the Plaintiffs sent a letter to the Defendants demanding, among other things, that the Defendants immediately cease and desist from all running of the Advertisement based on the infringement of THE OUTLAWYER Trademark and associated trade dress, including the OUTLAWYER Persona.  Exhibit M.

34.     On September 17, 2018, Scott Speagle, counsel for the Defendants, informed the undersigned that the Defendants did not intend to stop running the Advertisement despite the Plaintiffs' demands.

35.     As of the filing of this Complaint, despite knowledge of Abbott's rights, the Defendants continue to run the Advertisement in bad faith and in willful and intentional disregard and violation of Abbott's known rights to THE OUTLAWYER Trademark and its associated trade dress rights, including to that of the OUTLAWYER Persona, consisting of a distinctive cowboy style hat, and typically also including the use of a jacket and signature western-style background music.

36.     In conducting such unauthorize activity, the Defendants have infringed upon Abbott's rights and are likely to create and have created substantial confusion in the marketplace regarding the identity of the Outlawyer and the legal services provided thereby.  In so doing, the Defendants clearly intended to unfairly trade upon the substantial goodwill that Abbott had developed in THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona.

13

Such conduct is in clear violation of Abbott's proprietary and intellectual property rights and entitles the Plaintiffs to both injunctive and monetary relief as explained herein.

37.     The Defendants' conduct has caused and will continue to cause Abbott substantial harm in violation of his rights and further injury to his business reputation unless remedied by this Court.

## IV.   CLAIMS

### A.    COUNT ONE: Federal Trademark / Trade Dress Infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114) Against All Defendants.

38.     The Plaintiffs hereby incorporate and reallege paragraphs one (1) through thirty-seven (37) as if fully set forth herein.

39.     As described herein, Abbott has developed THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, into his own alter ego such that the consuming public have come to know and recognize Abbott as the Outlawyer and associate the look and feel of the OUTLAWYER Persona with that of the Outlawyer. In this regard, Abbott has developed substantial goodwill in the associated trade dress, including THE OUTLAWYER Persona.

14

40.     As a result of the acts complained of herein, the Defendants' use of THE OUTLAWYER trademark and its associated trade dress, including the OUTLAWYER Persona, has already and is likely to continue to cause confusion, mistake and deception among consumers regarding the identity of the Outlawyer and the legal services provided by Abbott in violation of 15 U.S.C. § 1114.

41.     Such consumers have been and will likely continue to be misled into believing that the Defendants are associated with, connected to, affiliated with, approved by or otherwise sponsored or authorized by the Plaintiffs to market legal services under THE OUTLAWYER Trademark and its associated trade dress, including the OUTLAWYER Persona or that the Defendants are the outright owners of THE OUTLAWYER Trademark, and the associated trade dress, including the OUTLAWYER Persona, in violation of 15 U.S.C. § 1114.

42.     The unlawful, intentional and willful conduct of the Defendants has caused and will continue to cause irreparable injury and monetary damages to the Plaintiffs unless and until they are restrained by this Court.  In this regard, the Defendants have willfully and intentionally refused to cease running the Advertisement despite the Plaintiffs' demands. The Plaintiffs have no adequate remedy at law for the non-monetary damages caused by the Defendants.

43.     The Defendants' conduct, jointly and severally, has resulted in direct and proximate injury to the Plaintiffs.

15

**B.**    **COUNT TWO: Federal Trademark / Trade Dress Infringement, False Designation of Origin, False or Misleading Representation of Fact, Unfair Competition and False Advertising Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) Against All Defendants.**

44.    The Plaintiffs hereby incorporate and reallege paragraphs one (1) through forty-three (43) as if fully set forth herein.

45.    As described herein, Abbott has developed THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, into his own alter ego such that the consuming public have come to know and recognize Abbott as the Outlawyer and associate the look and feel of the OUTLAWYER Persona with that of the Outlawyer. In this regard, Abbott has developed substantial goodwill in the associated trade dress, including THE OUTLAWYER Persona.

46.    As alleged herein, the conduct of the Defendants infringes upon the Plaintiffs' trademark rights, uses one or more false designations of origin, falsely or misleadingly represents and describes facts, falsely advertises that the Defendants are associated with, connected to, affiliated with, approved by or otherwise sponsored or authorized by the Plaintiffs to market legal services under THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona or that the Defendants are the outright owners of THE

OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona.

47.     Through such misrepresentations, the Defendants have caused and will continue to cause services to be marketed and offered for sale in interstate commerce through false advertising in violation of 15 U.S.C. § 1125(a).

48.     Moreover, the Defendants' appropriation and use of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, has caused confusion, mistake or deception with the Plaintiffs' trademark rights in that the consuming public will acquire an incorrect impression that the services marketed and sold by the Defendants under THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Defendants are the outright owners of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, thereby gaining acceptance and profit by reason of the reputation and goodwill associated with THE OUTLAWYER Trademark and associated trade dress, including the OUTLAWYER Persona, as developed by Abbott and causing the Plaintiffs irreparable harm and monetary damages.

17

49.     The aforesaid false and misleading advertising and misrepresentations by the Defendants has caused the Plaintiffs irreparable harm for which they have no adequate remedy at law.

50.     Unless and until the unlawful conduct of the Defendants, is restrained an enjoined by this Court, the Plaintiffs will continue to suffer irreparable harm and the consuming public will continue to suffer under a likelihood of confusion affecting the Plaintiffs.

51.     Unless restrained by this Court, the unlawful misrepresentations, false designations and false advertisements of the Defendants will be continuous, increasingly publicized and brought to the attention of the consuming public worldwide.  Furthermore, upon information and belief, the Defendants will continue to carry on their wrongful conduct as alleged herein and continue to do so unless enjoined by this Court.   In this regard, the Defendants have willfully and intentionally refused to cease running the Advertisement despite the Plaintiffs' demands.

52.     The Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

        **C.**     **COUNT THREE: Federal Trademark Dilution Under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)) Against All Defendants.**

53.     The Plaintiffs hereby incorporate and reallege paragraphs one (1) through fifty-two (52) as if fully set forth herein.

54.     Through his legal practice, Abbott has offered his legal services under THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, to those clients that are victims of severe personal injuries and extreme hardships.  In connection therewith, Abbott has had tremendous success and has come to be recognized by clients and his legal colleagues as The Outlawyer. These efforts have caused THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, to become famous.

55.     As alleged herein, the conduct of the Defendants in using THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, without the Plaintiffs' authorization, permission or consent, in connection with the Defendants' advertising and conduct described herein, causes dilution to the distinctiveness of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona in violation of 15 U.S.C. § 1125(c).

56.     The aforesaid conduct of the Defendants is made and maintained with the deliberate and willful intent to trade off the Plaintiffs' goodwill and reputation built into THE OUTLAWYER Trademark and the associated trade dress, including

the OUTLAWYER Persona, and to cause dilution of such trademark rights in violation of 15 U.S.C. § 1125(c).

57.    The aforesaid conduct of the Defendants constitutes violations of 15 U.S.C. § 1125(c), including dilution of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona.

58.    The unlawful and willful conduct of the Defendants is causing the Plaintiffs irreparable harm and monetary damages. In this regard, the Defendants have willfully and intentionally refused to cease running the Advertisement despite the Plaintiffs' demands. The Plaintiffs have no adequate remedy at law for their non-monetary damages.

59.    The Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

>    **D.    COUNT FOUR: Alabama Statutory and Common Law Trademark Infringement, Unfair Competition, Trademark Dilution, False Advertising and Deceptive Trade Practices Against All Defendants.**

60.    The Plaintiffs hereby incorporate and reallege paragraphs one (1) through fifty-nine (59) as if fully set forth herein.

61.    As described herein, Abbott has developed THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, into his own alter ego such that the consuming public have come to know and recognize Abbott as the Outlawyer and associate the look and feel of the

20

OUTLAWYER Persona with that of the Outlawyer. In this regard, Abbott has developed substantial goodwill in the associated trade dress, including THE OUTLAWYER Persona.

62.    As alleged herein, the conduct of the Defendants, constitute trademark infringement, unfair competition, trademark dilution, false advertising and deceptive trade practices in violation of the laws of the State of Alabama, including Ala. Code §§ 8-12-1, *et seq*. and Ala. Code §§ 8-19-1, *et seq.*, and the common law.

63.    The actions of the Defendants have caused and will continue to cause irreparable injury and monetary damages to the Plaintiffs unless restrained by this Court.  In this regard, the Defendants have willfully and intentionally refused to cease running the Advertisement despite the Plaintiffs' demands.

64.    The Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

**F.    COUNT FIVE: Conversion of the Plaintiffs' Property Against All Defendants.**

65.    The Plaintiffs hereby incorporate and reallege paragraphs one (1) through sixty-four (64) as if fully set forth herein.

66.    As alleged herein, the conduct of the Defendants constitutes an unlawful taking and theft of the Plaintiffs' property, including THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona for use in connection with provision of legal services.

21

67.     In committing such wrongful taking and theft of the Plaintiffs' property, the Defendants have converted and stolen said property described above for their own use and benefit and to the detriment of the Plaintiffs.

68.     The Defendants have caused and will continue to cause irreparable injury and monetary damages to the Plaintiffs unless restrained by this Court.  In this regard, the Defendants have willfully and intentionally refused to cease running the Advertisement despite the Plaintiffs' demands. The Plaintiffs have no adequate remedy at law for the non-monetary damages.

69.     The Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

### E.     COUNT SIX: Violation of the Alabama Right of Publicity Act, Ala. Code §§ 6-5-770, *et seq*. against all Defendants.

70.     The Plaintiffs hereby incorporate and reallege paragraphs one (1) through sixty-nine (69) as if fully set forth herein.

71.     As described herein, the Outlawyer and THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, constitute Indicia of Identity, as defined in Ala. Code § 6-5-771 (1), for Abbott, in that these are attributes serving to identify Abbott as the Outlawyer to potential personal injury clients and the public at large.

72.     Abbott has not given any authorization, permission or consent to any person or entity, including the Defendants, to use THE OUTAWYER Trademark

and the associated trade dress, including the OUTLAWYER Persona, or any other Indicia of Identity of Abbott as the Outlawyer.

73.    The Defendants' characteristics, conduct and activity as described herein in portraying a cowboy character in the Advertisement incorporate and use THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, as well as other Indicia of Identity, or substantially similar attributes thereto, belonging to Abbott as the Outlawyer, in violation of Ala. Code § 6-5-772(a).

74.    The Defendants' unauthorized use of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, as well as other Indicia of Identity, or substantially similar attributes thereto, belonging to Abbott as the Outlawyer, in the Advertisement does not constitute a fair use as the Defendants' use is solely for commercial purposes to advertise and promote the Defendants' legal services to potential personal injury clients in direct competition with the Plaintiffs.

75.    Upon information and belief and despite Plaintiffs' demands to cease and desist, the Defendants have run and continue to run the Advertisement on various television stations, including, but not limited to, WVTM Channel 13 in Birmingham, Alabama and WBRC Channel 6 in Birmingham, in multiple markets within the State of Alabama, multiple times per day.

76.     The Defendants have caused and will continue to cause irreparable injury and monetary damages to the Plaintiffs unless restrained by this Court.  In this regard, the Defendants have willfully and intentionally refused to cease running the Advertisement despite the Plaintiffs' demands. The Plaintiffs have no adequate remedy at law for the non-monetary damages.  Furthermore, pursuant to Ala. Code § 6-5-774(b)(2) violations of the Alabama Right of Publicity Act by the Defendants, as described herein, are presumed to constitute irreparable harm to the Plaintiffs.

77.     The Defendants' conduct, jointly and severally, has resulted in direct and proximate damage to the Plaintiffs.

## V.     RELIEF REQUESTED

WHEREFORE, the Plaintiffs demand the following:

1.      That the Court adjudge and decree that Abbott is the exclusive owner THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona for use in connection with legal services.

2.      That the Court adjudge and decree that the conduct of the Defendants, infringes upon the Plaintiffs' respective trademark and trade dress rights in violation of 15 U.S.C. § 1114.

3.      That the Court adjudge and decree that the conduct of the Defendants, infringes upon the Plaintiffs' respective trademark and trade dress rights in violation of 15 U.S.C. § 1125.

4.     That the Court adjudge and decree that the conduct of the Defendants serves to designate falsely the origin of the legal services marketed and offered by the Defendants and falsely represents that such legal services are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Defendants are the outright owners of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona.

5.     That the Court adjudge and decree that the conduct of the Defendants constitutes dilution of the Plaintiffs' famous THE OUTLAWYER Trademark and associated trade dress, including the OUTLAWYER Persona, in violation of 15 U.S.C. § 1125(c).

6.     That the Court adjudge and decree that the conduct of the Defendants constitutes violations of Ala. Code §§ 8-12-1, *et seq.* and Ala. Code §§ 8-19-1, *et seq.*

7.     That the Court adjudge and decree that the conduct of the Defendants infringes upon the Plaintiffs' rights under the common law of the State of Alabama.

8.     That the Court adjudge and decree that the conduct of the Defendants constitutes unfair competition under the common law of the State of Alabama.

9.     That the Court adjudge and decree that the conduct of the Defendants constitutes theft and conversion of the Plaintiffs' property under the common law of the State of Alabama.

10.     That the Court adjudge and decree that the conduct of the Defendants violates the Alabama Right of Publicity Act, Ala. Code §§ 6-5-770, *et seq*.

11.     That the Court enter temporary and permanent injunctions against the Defendants and any of their officers, agents, servants, employees and attorneys, and any of those persons in active concert or participation with the Defendants, from directly or indirectly:

(a)     Marketing, advertising or promotion of any legal services under THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona;

(b)     Using any word(s), mark(s), images and characterizations that are confusingly similar to THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, in connection with the marketing, advertising or promotion of legal services;

(c)     Representing by any words or conduct that legal services marketed, advertised or promoted by the Defendants are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Defendants are the outright owners of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona.

26

(d)     Committing any act which, in and of itself, or from the manner or under the circumstances in which it is done, amounts to a false designation of origin, false description or false representation of the Defendants.

12.     That the Court enter an injunction directing the Defendants:

(a)     To have removed from running on television stations in the Alabama marketplace, the Advertisement, as well as any other advertisements or promotional materials, any false advertisements that the legal services marketed, promoted or advertised by the Defendants are connected with, affiliated with, sponsored, controlled, produced, licensed or otherwise authorized by the Plaintiffs or that the Defendants are the outright owners of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona;

(b)     To preserve any and all records, whether in written or electronic form, that in any way relate to the use of THE OUTLAWYER Trademark and the associated trade dress, including the OUTLAWYER Persona, and the matters referred to herein; and

(c)     To file with the Court and to provide a copy to the below counsel of record, within thirty (30) days of the service of such injunction upon the Defendants, a written report detailing under oath the manner in which the Defendants have complied with the injunction.

27

13.     That the Court enter judgment against the Defendants, jointly and severally, and award the Plaintiffs damages arising out of the Defendants' violations of the Lanham Act and Alabama statutory and common law.

14.     That the Court enter judgment against the Defendants, jointly and severally, and award the Plaintiffs damages arising out of the Defendants' wrongful theft and conversion of the Plaintiffs' property.

14.     That the Court enter judgment against the Defendants, jointly and severally, and award the Plaintiffs statutory damages under the Alabama Right of Publicity Act, Ala. Code § 6-5-774(1)(a) in the amount of $5,000 for every public showing of the Advertisement.

15.     That the Court enter judgment against the Defendants, jointly and severally, and award the Plaintiffs an amount equal to the Defendants' profits from running the Advertisement, pursuant to Ala. Code § 6-5-774(1)(a).

16.     That the Court award the Plaintiffs punitive damages against the Defendants, jointly and severally, due to their willful and intentional conduct as described herein.

17.     That the Court award the Plaintiffs treble damages against the Defendants, jointly and severally, due to their willful and intentional conduct as described herein.

18.     That the Court award the Plaintiffs their full costs for this action.

19.     That the Court award the Plaintiffs reasonable attorney's fees.

20.     That the Court require a full and complete accounting of all monies received by the Defendants as a result of the wrongful actions stated herein.

21.     That the Court award interest at the then prevailing or legal rate, whichever is greater, on all monies found to be due to the Plaintiffs from the date said amounts or any part thereof became or becomes due.

22.     That the Court require the Defendants to notify their commercial associates, suppliers, vendors, customers, and other business affiliations of the Court's order.

23.     That the Court grant the Plaintiffs a trial by jury.

24.     That the Court award such other and further relief as the Court may deem appropriate, just and proper.

Respectfully submitted this 24th day of October 2018.

/s/ *Joseph P. Schilleci, Jr.*
Joseph P. Schilleci, Jr.

/s/ *Jason P. Tortorici*
Jason P. Tortorici
Schilleci & Tortorici, P.C.
2821 2nd Avenue South, Suite E
Birmingham, Alabama 35233
Telephone: (205) 978-4211
Facsimile: (205) 978-4212
Email: jps@schillecitortoricilaw.com


Attorneys for the Plaintiffs

29

**<u>DEFENDANTS TO BE SERVED AT THE FOLLOWING ADDRESSES</u>:**

Slocumb Law Firm, LLC
c/o Registered Agent: Michael W. Slocumb
145 E Magnolia Avenue # 201
Auburn, Alabama 36830

Michael W. Slocumb, Esq.
Slocumb Law Firm, LLC
145 E Magnolia Avenue # 201
Auburn, Alabama 36830

With a copy to the following:

Scott Speagle, Esq.
Webster Henry
105 Tallapoosa Street, Suite 101
Post Office Box 239
Montgomery, Alabama 36101-0239